IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NANCY R., | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 2962 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum Opinion and Order

Plaintiff, Nancy R.,[1] seeks judicial review of the Commissioner of Social Security's[2] denial of her applications for Disability Insurance Benefits and Supplemental Security Income Benefits. For the reasons set forth below, the Court reverses Defendant's decision and remands this case to the Social Security Administration for further proceedings.

## Background

The Court takes the following facts from the Certified Copy of Administrative Record ("AR") (ECF No. 10). On October 23, 2018, Plaintiff filed applications for Social Security Disability Insurance and Supplemental Security Income Benefits, alleging disability starting on March 1, 2018. Plaintiff obtained a hearing before an administrative law judge ("ALJ") on November 12, 2020. The ALJ issued an unfavorable decision on December 4, 2020. The Appeals Council denied review.

---

[1] Pursuant to this district's Internal Operating Procedure 22, the Court refers to plaintiff by her first name and the first initial of her last name or simply "Plaintiff."

[2] In accordance with Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi as defendant in this matter.

I.        **Plaintiff's Testimony and Medical History**

At the hearing, Plaintiff testified that she suffers from numerous health issues, including depression, anxiety, fibromyalgia, and lower back dysfunction. (AR 104.) Plaintiff stated that she last worked in 2018 and quit her job because of body pain. (AR 117.) She testified that she could stand for about 5-10 minutes before requiring a break, sit for about 20 minutes before needing a break, lift between 15-20 pounds, and do some basic household tasks. (AR 118-126.) Plaintiff further testified that, due to depression, she experiences crying spells every day and that her prescribed medication does not help alleviate her symptoms. (AR 82.)

In addition to Plaintiff's testimony, the ALJ's decision summarized her medical records. Those records spanned from 2017 to 2020 and showed that Plaintiff was diagnosed with cervicalgia, myalgia, fibromyalgia, and low back pain. (AR 83). At times, Plaintiff had limited range of motion in her cervical spine, but her extremity strength was usually intact. (AR 83-84.) Plaintiff underwent trigger point injections, but her condition did not improve. (AR. 83). Imaging showed minimal arthritis in Plaintiff's right ankle and osteoarthritis in both knees (AR 83-84.) Imaging of the left foot, however, was unremarkable. (AR 83.) An MRI of Plaintiff's lumbar region in February of 2020 showed degenerative changes in her facet joints, mild disc bulging in the lower three lumbar levels, and a central disc protrusion with annular fissure at L4-5. (AR 84-85). Nerve testing of Plaintiff's lumbar spine was unremarkable, and a physician noted that Plaintiff's subjective complaints appear to be out of proportion with objective findings. (AR 1452.) Another MRI of Plaintiff's lumbar spine in September of 2020 revealed multilevel degenerative changes with stenosis at L4-L5, a disc protrusion at L3-L4 with mild deformity of the exiting left L3 nerve root. Plaintiff later underwent a left L3-L4 hemilaminectomy. (AR 85.)

With respect to Plaintiff's mental health records, these showed that she was diagnosed with Bipolar type II, generalized anxiety disorder, and insomnia, and prescribed Klonopin, Seroquel, Tegretol, Prozac and Wellbutrin. (AR 83.). The records noted at various appointments that she had a normal mood, affect, and appeared fully oriented. (AR 83-84.) The records also indicate, however, that her speech was pressured during some appointments. (AR 83-84.)

In April of 2019, Plaintiff underwent a psychological consultative exam, during which she complained of feeling hopeless, poor sleep and appetite, and crying spells. (AR 84.) She reported that she performed light cleaning, could shop for groceries, and attended her medical appointments. (AR 84.). She was observed to be alert, cooperative and fully oriented; but her mood was depressed, and she cried throughout the interview. (AR 84.) In May, Plaintiff went to the emergency room for cutting herself after an argument with her sister. (AR 84.) After examination, she was found to have superficial lacerations, a normal musculoskeletal range of motion, she was alert, fully oriented and her behavior was intact. (AR 84.) Her insight and judgment were fair, her thought process was organized, her memory was intact, and her attention and concentration were "sufficient." (AR 84.)

## II.     Administrative Hearing

After Plaintiff's testimony, the ALJ proceeded to review her medical records and determine whether she was disabled. To determine whether a claimant is disabled, the Social Security Administration ("SSA") follows a five-step review process, sequentially assessing "(1) the claimant's current work activity; (2) [if none,] the medical severity and duration of the claimant's impairments; (3) whether the claimant's impairments meet or medically equal the requirements of an impairment listed in the regulations; (4) [if not,] whether the claimant has the residual functional capacity to return to past relevant work; and (5) if the claimant cannot return

to past relevant work, whether he or she can 'make an adjustment to other work' in the national economy." *Varga v. Colvin*, 794 F.3d 809, 812 n.2 (7th Cir. 2015) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)).

Applying these steps, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; lumbar discectomy (9/2018); arthritis, right ankle; fracture, leg arm, status post-surgery; fibromyalgia; and major depression, recurrent. (AR 79.) But the ALJ found that these impairments, or combination of impairments, did not meet or medically equate to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (AR 79.) The ALJ further found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations: frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop and crouch; frequently handle, finger, and feel with the left upper extremity; and never operate foot controls with the right lower extremity. (AR 81.) The ALJ also found that Plaintiff required the use of an assistive device (cane) to ambulate and could never be exposed to hazards such as moving machinery and unprotected heights. (AR 81.) She further limited Plaintiff to performing simple, routine, and repetitive tasks, but not at a production rate pace (*e.g.*, no assembly line work). (AR 81.) Lastly, the ALJ found that jobs in the national economy existed that Plaintiff could perform. (AR 88.) Based on those findings, the ALJ denied Plaintiff's applications for benefits. (AR 88.)

## Discussion

When the Social Security Appeals Council denies an unsuccessful applicant's request for review, the ALJ's decision becomes the SSA's and Commissioner's final decision. *Nelms v.*

*Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). A claimant may seek review of a final decision in a federal district court, which may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The reviewing court's role is limited: it may reverse the Commissioner's final decision only if it is not supported by substantial evidence or is based on a legal error. *Hopgood v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009); s*ee also Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003) (noting that "[t]his is a deferential but not entirely uncritical standard, for the Commissioner's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues" (internal citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). The reviewing court cannot reweigh the evidence or substitute its judgment for the ALJ's; it is limited to reviewing the ALJ's decision to determine if it creates a logical bridge from the evidence to the conclusions. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Plaintiff argues that the ALJ erred in: (1) evaluating the medical opinions of Dr. Zahid, (2) establishing a logical bridge from the evidence to her residual functional capacity ("RFC") findings, and (3) evaluating her symptoms. Plaintiff also initially argued that the Court should reverse the ALJ's decision because the SSA's structure violates the separation of powers under *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), but withdrew this argument in her reply. Because the Court finds Plaintiff's logical bridge argument dispositive of this case, the Court need not address Plaintiff's other arguments.

Social Security Regulation 96-8p requires that the ALJ's RFC assessment include a narrative discussion describing how the evidence supports each conclusion, citing specific medical and nonmedical evidence. To be sure, an ALJ need not discuss every piece of evidence, but he must build an accurate and logical bridge from the evidence to his RFC assessment. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). This means that the ALJ must "explain how [he] reached [his] conclusions" about an applicant's "physical capabilities" by pointing to evidence that "support[s] the propositions for which it is cited." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "It is not a court's role to displace an ALJ's judgment by making [its] own findings about the facts, but [a court] cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

At the same time, summarizing medical evidence is not a substitute for analysis. *Erwin v. Astrue*, No. 11 CV 1555, 2012 WL 3779036, at *8 (N.D. Ill. Aug. 30, 2012). Rather, the ALJ must consider the entire record and confront the evidence that does not support his conclusions and explain why he rejected it. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Scrogham v. Colvin*, 765 F. 3d 685, 697 (7th Cir. 2014). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

Contrary to these principles, the ALJ's RFC assessment in this case does not contain an adequate analysis of the evidence to permit meaningful review. Rather, the ALJ's RFC discussion merely summarizes the testimony and medical evidence in the case, which contains both favorable and unfavorable evidence. (AR 81-85.) But aside from a single paragraph, this

discussion does not contain any meaningful analysis of the medical and nonmedical evidence or why the ALJ discounted certain evidence while crediting other pieces of evidence.

Take, for instance, the ALJ's discussion of Plaintiff's lumbar spine impairment. The ALJ summarized Plaintiff's medical treatment with respect to her lumber spine citing both positive and negative facts. (*See* AR 82-85.) Although the ALJ cited Plaintiff's medical history, she failed to explain how she considered the conflicting evidence in reaching her conclusion. Instead, the decision contains conclusory statements like: "The undersigned has carefully considered the claimant's statements concerning his [sic] impairments and their impact on the ability to perform work activity and finds the allegations are somewhat inconsistent with other medical evidence of record" or "However, the record as a whole does not demonstrate the existence of limitations of such severity as to have precluded onset date of disability." (AR 87.) These conclusory statements explain nothing and are precisely the sort of language that courts recognize as "'meaningless boilerplate.'" *Jacklin D. v. Kijakazi*, No. 19 C 2361, 2022 WL 797049, at *6 (N.D. Ill. Mar. 16, 2022) (quoting *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016)); *see also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

The only substantive explanation the ALJ gave was that "[w]hile imaging studies showed some positive findings, the claimant retains relatively normal reflexes, strength and sensation, with occasional noted muscle spasms. She testified that he [sic] is able to lift and carry up to 20 pounds." (AR 87.) This statement fails to discuss the evidence the ALJ considered (though the Court infers that she considered the summarized evidence) or, more importantly, how she weighed the evidence.

The same is true with respect to Plaintiff's mental health impairments. The ALJ's decision states that "[m]ental health records generally show good response to treatment and

medications, and the claimant is able to engage in a variety of activities, such as personal care, household chores, preparing simple meals, dating, managing her finances, and shopping for groceries." (AR 87.) Aside from this sentence, the decision contains no other analysis of Plaintiff's mental health status. The decision fails to analyze the findings that Plaintiff suffered from mental health issues, which are documented throughout her medical records, or explain why the ALJ discounted these findings.

Defendant argues that the ALJ was not required to engage in a function-by-function analysis in her decision. *See Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020). Certainly, an ALJ is not required to walk through a function-by-function analysis of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. *Id.*; *see also* 20 C.F.R. 404.1545(b)-(d) (discussing Social Security Administration assessment of physical, mental, and other abilities); 20 C.F.R. § 416.945(b)-(d) (same). But an ALJ must still articulate its findings in a way that allows the reviewing court to carry out its role. *Jeske*, 955 F.3d at 596. As discussed above, the ALJ's decision in this case fails to do that.

Moreover, although the ALJ explained some reasons for why she discounted the medical opinions in the record, even some of those discussions lack sufficient detail. With respect to Dr. Zahid's opinion, for example, the ALJ stated that "[t]he doctor's opinion that the claimant is able to sit for up to fifteen minutes at one time and can stand for up to ten minutes at one time is also unpersuasive, as it is unsupported by the record as a whole." (AR 85.) Yet nowhere in the decision does the ALJ explain why this opinion is inconsistent with the record or what evidence she relied on to make this finding. Even if the testimony and medical records contained evidence that the ALJ interpreted to show that Plaintiff's impairments were less serious than her complaints suggested, the ALJ needed to "articulate specific reasons" why. *Schmidt*, 395 F.3d at

8

746; *see Steele*, 290 F.3d at 941; SSR 16-3p, 2016 WL 1119029, at *9; *see also Kevin B. v. Saul*, No. 19 C 1655, 2020 WL 2468131, at *12 (N.D. Ill. May 13, 2020). Because the ALJ did not do this, the case must be reversed and remanded.

## Conclusion

For the reasons above, the Court denies the Commission's motion for summary judgment [20] and grants summary judgment in favor of the Plaintiff. The Court remands this case to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order. Civil case terminated.

**SO ORDERED.**  ENTERED: August 31, 2022

_____
**HON. JORGE ALONSO**
**United States District Judge**